# Ardelle Lowe

## v.

# Department of Public Welfare of the City of Richmond

Record No. 830572

April 25, 1986

Present: All the Justices.

*William R. Marshall, Jr.* for appellant.
*J. Richard Haymes, Jr. (Moore, Pollard & Haymes*, on brief), for appellee.

STEPHENSON, J., delivered the opinion of the Court.

In this case, the trial court, pursuant to Code § 16.1-283(B)[1], terminated a natural mother's residual parental rights in her son. In its order, the court found by clear and convincing evidence that termination would be in the child's best interests and that:

> (1) the neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and (2) it is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his mother within a reasonable period of time.

The sole question in this appeal is whether the evidence supports the trial court's finding that it is not reasonably likely that the

---

[1] Code § 16.1-283(B) in pertinent part provides:

B. The residual parental rights of a parent . . . of a child found by the court to be neglected or abused and placed in foster care as a result of . . . court commitment, . . . may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:

1. The neglect or abuse suffered by such child presented a serious and substantial threat to his . . . life, health or development; and

2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his . . . parent . . . within a reasonable period of time.

conditions which resulted in the neglect or abuse of the child can be substantially corrected or eliminated so as to allow his safe return to his mother within a reasonable period of time. Code § 16.1-283(B).

Because the appellee, Department of Public Welfare, prevailed at trial, we must view the evidence and all reasonable inferences in the light most favorable to it. The child in question was born on June 13, 1973, to Theodore Brown[2] and the appellant, Ardelle Lowe. In December 1976, when the child was three and one-half years old, his mother was hospitalized, and his father was unable to care for him. As a result, the Department placed him in a foster home in Charles City County, where he continues to reside.

In January 1977, the Juvenile and Domestic Relations District Court determined that the mother was unable to care for the child. The court, therefore, committed the child to the Department under a foster care plan. A Department social worker testified that the mother's alcoholism has been and continues "to be the main problem [preventing] her from taking responsibility for her son."

Although transportation was made available to her, Lowe has visited her son only three times since 1977. Lowe was intoxicated during one of these visits, and the child thereafter refused to see her. Following this visit, Lowe consented to her son's adoption but later changed her mind. In 1982, the Department instituted this termination proceeding.

In June 1978, Lowe voluntarily entered Central State Hospital for treatment. While there, she was examined by a physician who diagnosed her as suffering from schizophrenia, chronic alcoholism, drug dependence, and seizures. Lowe informed the doctor that she had attempted suicide on two occasions. The doctor also reported that Lowe experiences visual hallucinations of "little men or little bugs crawling on her legs." She also has auditory hallucinations, in which "she hears voices calling her names."

A neurologist who examined Lowe in 1979 also reported that she had visual hallucinations which she described as "little men who try to get her." The neurologist opined that Lowe appeared to be "psychotic," and because of her "extremely low IQ," she would be categorized as having "mild mental retardation." He doubted Lowe would take medication on a regular basis or obtain the nec-

---

[2] The father's parental rights also were terminated, and he has not appealed.

essary neurological and psychiatric follow-up. Lowe told the neurologist that she was unable to take care of her children.

A psychologist examined Lowe in 1979 and found that she was "mildly retarded" with an IQ of 58. He also testified that Lowe has had difficulty in "appropriately control[ling] her aggressions."

The record discloses that the Department undertook to rehabilitate the mother. Goodwill Industries employed Lowe but, shortly thereafter, terminated her employment because of excessive drinking and difficulties with her supervisors. The Department then placed her in a full-time rehabilitation facility for alcoholics, but she was released due to undefined problems with her supervisors.

In early 1980, Lowe voluntarily enrolled in an alcoholic rehabilitation program at the Medical College of Virginia and was under the care of one of the program's psychiatrists. This psychiatrist testified that a severe head injury Lowe suffered damaged the portion of her brain that controls anxiety; this in turn fostered her alcoholism. The doctor also testified that Lowe was under medication to control her drinking and that she had been sober for the 11 months preceding his last examination of her. According to the doctor, Lowe was happier and more stable than when she began the treatment. Lowe's son is described as a healthy, intelligent, and well-adjusted child. He is happy in his foster home, performs well in school, and gets along well with other children.

The termination of parental rights is a grave, drastic, and irreversible action. When a court orders termination of parental rights, the ties between the parent and child are severed forever, and the parent becomes "a legal stranger to the child." *Shank* v. *Dept. Social Services*, 217 Va. 506, 509, 230 S.E.2d 454, 457 (1976).

> Our prior decisions clearly indicate a respect for the natural bond between children and their natural parents. The preservation of the family, and in particular the parent-child relationship, is an important goal for not only the parents but also government itself. While it may be occasionally necessary to sever the legal relationship between parent and child, those circumstances are rare. Statutes terminating the legal relationship between parent and child should be interpreted consistently with the governmental objective of preserving, when possible, the parent-child relationship.

*Weaver* v. *Roanoke Dept. of Human Res.*, 220 Va. 921, 926, 265 S.E.2d 692, 695 (1980).

██ Before residual parental rights can be terminated under Code § 16.1-283(B), a court must find by clear and convincing evidence[3] that termination is in the child's best interests, that the neglect and abuse suffered by the child present a serious and substantial threat to his life, health, or development, § 16.1-283(B)(1), and that it is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent within a reasonable period of time, § 16.1-283(B)(2). In this appeal, Lowe challenges only the trial court's finding regarding subsection (B)(2).

Code § 16.1-283 provides that proof of the following shall constitute prima facie evidence of the conditions set forth in subsection (B)(2):[4]

> a. The parent or parents are suffering from a mental or emotional illness or mental deficiency of such severity that there is no reasonable expectation that such parent will be able to undertake responsibility for the care needed by the child in accordance with his or her age and stage of development; . . . .

Code § 16.1-283(B)(2)(a).

██ As previously noted, the evidence established that Lowe is schizophrenic, psychotic, and mentally deficient. She experiences visual and auditory hallucinations. Additionally, Lowe is a chronic alcoholic. These conditions have existed for a number of years, and no appreciable improvement could be detected at the time of trial. It is apparent, therefore, that Lowe's infirmities are of such severity that "there is no reasonable expectation that [she] will be

---

[3] We have defined clear and convincing evidence as "that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and *unequivocal.*" *Gifford* v. *Dennis*, 230 Va. 193, 198 n.1, 335 S.E.2d 371, 373 n.1 (1985), *quoting Walker Agcy. & Aetna Cas. Co.* v. *Lucas*, 215 Va. 535, 540-41, 211 S.E.2d 88, 92 (1975) (emphasis in original).

[4] Code § 16.1-283 provides three alternative methods for establishing prima facie evidence of the conditions set forth in subsection (B)(2). In our view of the record, we need address only the first of these alternatives, § 16.1-283(B)(2)(a).

able to undertake responsibility for the care needed by [her son]." Code § 16.1-283(B)(2)(a). Thus, there is prima facie evidence that it is not reasonably likely that Lowe's conditions can be substantially corrected or eliminated within a reasonable time, *see* Code § 16.1-283(B)(2), and Lowe has failed to rebut this evidence. *See Richardson* v. *Dept. of Soc. Serv.*, 223 Va. 670, 677, 292 S.E.2d 342, 346 (1982).

■ Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to the same weight accorded a jury verdict, and it will not be disturbed on appeal unless plainly wrong or without evidence to support it. *Gray* v. *Gray*, 228 Va. 696, 699, 324 S.E.2d 677, 679 (1985). The trial court found by clear and convincing evidence that the conditions of Code § 16.1-283(B)(2) had been established, and we agree.

The facts and circumstances justify severance of the parent-child relationship. Accordingly, the judgment of the trial court will be affirmed.

*Affirmed.*